**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHELCIE WASHINGTON and KIERA WASHINGTON, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| | ) |
| Plaintiff, | ) ) |
| | ) |
| v. | ) ) |
| | ) |
| AMPD GROUP, LLC.; AMPD HOLDINGS, LLC; AMPD IP, LLC; AMPD MYRTLE, LLC; AMPD102, LLC; AMPD 231; AMPD 317, LLC; ADAM DESIMONE, MICHAEL DESIMONE, PATRICK DESIMONE, and DOE DEFENDANTS 1-10. | ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) ) |

Civil Action No.:  2:20-cv-830

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Chelcie Washington and Kiera Washington (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

**INTRODUCTION**

1.      This is a class and collective action brought on behalf of "Tipped Employees" who work or have worked at restaurants and bars that are owned, operated and/or otherwise managed or controlled by Defendants AMPD Group, LLC ("AMPD"), AMPD Holdings, LLC ("AMPD Holdings"), AMPD IP, LLC ("AMPD IP"); AMPD Myrtle, LLC ("AMPD Myrtle"), AMPD102, LLC ("AMPD102"), AMPD 231, AMPD 317, LLC ("AMPD 317")[1], Adam DeSimone, Michael DiSimone, and Patrick DiSimone, (collectively, "Defendants") and have been subject to the unlawful practices detailed herein.

---

[1] Additional or different entity defendants may be revealed as the case progresses.  Plaintiffs reserve their right to amend this Complaint to add these additional defendants if and when appropriate.

2.     Upon information and belief, Defendants own and/or otherwise control at least 12 restaurants and bars operating under several trade names, including: Delanie's Coffee, Foxtail, Local Bar & Kitchen, Penn Society, Skybar, Social House Seven, The Standard Market & Pint House, Steel Cactus, and Ten Penny (collectively the "AMPD Entities").

3.     As detailed below, upon information and belief, each of the AMPD Entities operated by Defendants maintain common ownership and share the same employment policies, including those relating to the compensation of Tipped Employees.

4.     As such, upon information and belief, the employment practices complained of herein were applicable to all Tipped Employees employed by AMPD, as Defendants utilized common labor policies and practices at the AMPD Entities. Accordingly, Defendants are responsible for the employment practices complained of herein.

5.     According to the company's website, AMPD operates the AMPD Entities in the Commonwealth of Pennsylvania, while also operating one of the AMPD Entities, Local Bar & Kitchen North Myrtle Beach, in the State of South Carolina. *See* https://www.ampdgroup.com/restaurants (last visited June 3, 2020).

6.     Defendants employ individuals in a tipped capacity, namely "servers" ("waiters and "waitresses") and "bartenders" (collectively, "Tipped Employees"), who are and/or were subjected to Defendants' unlawful pay practices.  As Tipped Employees, these individuals were primarily responsible operating the "front of the house" and interacting with customers, including taking customers' orders, serving them their food/drink, and removing the used plates/glasses after the customers was done eating/drinking.

7.     As explained in detail below, Defendants systematically and willfully deprived Plaintiffs and other Tipped Employees of minimum wages in violation of the Fair Labor Standards

Act, 29 U.S.C. § 201, *et seq.,* ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.,* and the Wage Payment and Collection Law, 43 Pa. S. § 260.I, *et seq.,* ("WPCL")[2] by, among other things, failing to satisfy the notice requirements of the tip credit provisions of the FLSA and PA State Laws.

8.     Due to Defendants' unlawful failure to properly inform Tipped Employees of its intention to utilize a "tip credit" as well as its other violations of the tip credit provisions set forth herein, Defendants have improperly applied a "tip credit" against the wages paid to Plaintiffs and current and former Tipped Employees.   The result of Defendants' conduct is that Tipped Employees were paid less than the mandated minimum wage.

9.     In addition, Defendants violated the PMWA and WPCL when they required Plaintiffs and other Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as after the restaurant had closed or when a Tipped Employee was "cut" for the day *(e.g.,* they were no longer responsible for serving customers and instead had to perform solely cleaning/stocking work).

10.     Further, Defendants required Plaintiff and current and former Tipped Employees to perform numerous non-tipped duties that are unrelated to their tipped occupation.   This includes but is not limited to, cleaning the restaurant, cleaning the monitors, run the coffee pots thru with cleaning solutions (and then run thru with just water), polish silverware, setting up/breaking down prep stations, stocking liquor and beer, and preparing drinks.   Notably, much of this work was performed either before the restaurant opened to the public or after it closed, necessarily meaning that Plaintiffs and other Tipped Employees could not receive tips during this time as there were no customers in the restaurant during these times.

---

[2] The PMWA and WPCL are collectively referred to herein as the "PA State Laws."

11.     Despite spending significant time performing this unrelated non-tipped work, Defendants paid Plaintiffs and current and former Tipped Employees a sub-minimum wage for performing this work.

12.     In addition, Plaintiffs also worked in excess of forty (40) hours per week.  However, when they did so, Defendants paid them at the wrong overtime rate.

13.     As a result of the aforementioned pay practices, Plaintiffs and the members of the Classes (defined below) were illegally under-compensated for their work.

## SUMMARY OF CLAIMS

14.     Plaintiffs bring this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 20 I *et seq.* ("FLSA" or the "Act").

15.     Plaintiffs brings this suit on behalf of the following similarly situated persons:

> All current and former Tipped Employees who have worked for Defendants in the United States within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 2 I 6(b) (the "Collective Class").

16.     In addition, Plaintiff also brings this suit on behalf of the following similarly situated persons for unpaid overtime wages pursuant to the FLSA:

> All current and former Tipped Employees who have worked in excess of forty hours in one or more work weeks for Defendants in the United States within the statutory period covered by this Complaint who were not compensated for all hours worked in excess of forty at the proper overtime rate and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective OT Class").

17.     Plaintiffs also bring this action as a state-wide class action to recover unpaid wages pursuant to the PA State Laws.

18.     Specifically, Plaintiffs bring this suit on behalf of a class of similarly situated persons composed of:

> All current and former Tipped Employees who have worked for Defendants in the Commonwealth of Pennsylvania during the statutory period covered by this Complaint (the "PA Class").

19.     In addition, Plaintiff also brings this suit on behalf of a class of similarly situated persons for unpaid overtime wages pursuant to the PMWA:

> All current and former Tipped Employees who (i) have worked in excess of forty hours in one or more work weeks in the Commonwealth of Pennsylvania during the statutory period covered by this Complaint and (ii) were not compensated for all hours worked by Defendants (the "PA OT Class").

20.     The Collective Class, the Collective OT Class, the PA Class, and the PA OT Class are hereafter collectively referred to as the "Classes."

21.     Plaintiffs allege on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which Defendants failed to comply with the notice provisions of the tip credit and pay the mandatory minimum wage, as required by law and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

22.     In addition, Plaintiffs also allege on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which they performed unrelated, non-tip-generating work for which Defendants failed to pay the full, mandatory minimum wage, as required by law and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

23.     Plaintiffs allege on behalf of the Collective OT Class that they are: (i) entitled to unpaid overtime wages from Defendants for hours worked for which Defendants failed to pay all overtime wages due and owing and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 et seq.

24.     Plaintiffs allege on behalf of the PA Class that Defendants violated the PA State Laws by failing to comply with the tip credit provisions, as required by law, and consequently failing to pay them the appropriate minimum wages for all hours worked.  In addition, Defendants also violated PA State Laws by failing to pay PA Class members the full minimum wage for time spent performing non-tip generating work.

25.     Finally, Plaintiffs allege on behalf of the PA OT Class that Defendants violated the PMWA by failing to pay all overtime wages due and owing for weeks where Tipped Employees worked in excess of forty (40) hours.

## PARTIES

26.     Plaintiff Chelcie Washington is a resident of the Commonwealth of Pennsylvania, living at 510 Woodward Avenue, McKees Rocks, Pennsylvania, 15136, who was employed by Defendants as a "server" at their Ten Penny restaurant, and subsequently, as a "bartender" in their Steel Cactus restaurant.  While employed as a Tipped Employee, Defendants failed to compensate Chelcie Washington properly for all hours worked.

27.     Plaintiff Kiera Washington is a resident of the Commonwealth of Pennsylvania, living at 625 Herschel Street, Pittsburgh, Pennsylvania 15220, who was employed by Defendants as a "server" at their Ten Penny restaurant, and subsequently, as a "bartender" at that restaurant. Kiera Washington later worked for Defendants at their Penn Society restaurant/after-hours club. While employed as a Tipped Employee, Defendants failed to compensate Kiera Washington properly for all hours worked.

28.     Pursuant to Section 216(b) of the FLSA, Plaintiffs have consented in writing to be plaintiffs in this action.  Chelcie Washington's Consent To Sue form is attached hereto as **Exhibit A**, and Kiera Washington's Consent To Sue form is attached hereto as **Exhibit B**.

29.     Upon information and belief Defendant AMPD Group, LLC is limited liability company incorporated in the state of Pennsylvania who owns, operates or otherwise has a controlling interest in some or all of the AMPD Entities.

30.     Upon information and belief Defendant AMPD Group Holding, LLC is limited liability company incorporated in the state of Pennsylvania who owns, operates or otherwise has a controlling interest in some or all of the AMPD Entities.

31.     Upon information and belief Defendant AMPD Group Holding, LLC is limited liability company incorporated in the state of Pennsylvania who owns, operates or otherwise has a controlling interest in some or all of the AMPD Entities.

32.     Upon information and belief Defendant AMPD IP, LLC is limited liability company incorporated in the state of Pennsylvania who owns, operates or otherwise has a controlling interest in some or all of the AMPD Entities.

33.     Upon information and belief Defendant AMPD Myrtle, LLC is limited liability company incorporated in the state of Pennsylvania who owns, operates or otherwise has a controlling interest in some or all of the AMPD Entities.

34.     Upon information and belief Defendant AMPD102, LLC is limited liability company incorporated in the state of Pennsylvania who owns, operates or otherwise has a controlling interest in some or all of the AMPD Entities.

35.     Upon information and belief Defendant AMPD 231 is limited liability company incorporated in the state of Pennsylvania who owns, operates or otherwise has a controlling interest in some or all of the AMPD Entities.

36.     Upon information and belief Defendant AMPD 317, LLC is limited liability company incorporated in the state of Pennsylvania who owns, operates or otherwise has a controlling interest in some or all of the AMPD Entities.

37.     Defendant Adam DeSimone is, according to the Company's website, one of the founding partners of AMPD.  *See* https://www.ampdgroup.com/ (last visited June 3, 2020).  In his capacity as an officer of the AMPD Entities Adam DeSimone exercises sufficient control over the labor policies and practices of Defendants' restaurants complained of herein to be considered the employer of Plaintiff and the Classes for purposes of the FLSA and PA State Laws.

38.     Defendant Michael DeSimone is, according to the Company's website, one of the founding partners of AMPD.  *See* https://www.ampdgroup.com/ (last visited June 3, 2020).  In his capacity as an officer of the AMPD Entities Michael DeSimone exercises sufficient control over the labor policies and practices of Defendants' restaurants complained of herein to be considered the employer of Plaintiff and the Classes for purposes of the FLSA and PA State Laws.

39.     Defendant Patrick DeSimone is, according to the Company's website, one of the founding partners of AMPD.  *See* https://www.ampdgroup.com/ (last visited June 3, 2020).  In his capacity as an officer of the AMPD Entities Patrick DeSimone exercises sufficient control over the labor policies and practices of Defendants' restaurants complained of herein to be considered the employer of Plaintiff and the Classes for purposes of the FLSA and PA State Laws.

40.     At all relevant times during the statutory period covered by this Complaint, Defendants have transacted business within the Commonwealth of Pennsylvania, including within this district.

41.     At all relevant times during the statutory period covered by this Complaint, Defendants have operated as a "single enterprise" within the definition of Section 203(r)(1) of the

FLSA. Defendants uniformly operated its restaurants under common control for a common business purpose.

42.     Defendants are engaged in related activities, *e.g.*, activities which are necessary to the operation and maintenance of the AMPD Entities in the Commonwealth of Pennsylvania and nationwide.

43.     Defendants are a single and joint employer with a high degree of interrelated and unified operations, sharing common officers and, according to the website of the Pennsylvania Secretary of State, common corporate addresses.[3]  Each of these Defendants share the common labor policies and practices complained of herein.   Indeed, upon information and belief, Defendants share common management between restaurant locations, share common employees between locations, as well as share common human resources and payroll services all of Defendants' locations share the common labor policies and practices complained of herein.

44.     Upon information and belief, the sole reason for separate corporate entities was to limit the liability of Defendants.  Evidencing the interrelation and unified operation of the AMPD Entities, many of the entities maintain the same corporate address and all have a common ownership/management structure.

45.     Further evidence of the interrelated nature of Defendants is the fact that they maintain one website which references each location of their restaurant locations. *See* https://www.ampdgroup.com/ (last visited June 3, 2020).

---

[3] All of the corporate entity Defendants other than AMPD Group, LLC, uses the same address as its corporate address, which is located at 1801 East Carson Street, Pittsburgh, Pennsylvania 15203. Defendant AMPD Group, LLC, uses a corporate address of 1601 East Carson Street, Pittsburgh, Pennsylvania 15203, which is the address of Defendants' Foxtail bar and restaurant.

46.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff.  Plaintiff believes there are additional entities employing Tipped Employees that have not yet been identified.  Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the Defendants.  In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.

## JURISDICTION AND VENUE

47.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

48.     Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

49.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

50.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

51.     The crux of the FLSA and the PA State Laws is, *inter alia*, that all employees are entitled to be paid mandated minimum wages for all hours worked.

52.     Contrary to these basic protections, Plaintiffs and the members of the Classes were deprived of the mandated minimum wage for all hours they worked.

53.     In addition, Plaintiff and the members of the Collective OT Class and PA OT Class were deprived of premium overtime compensation for all hours worked in excess of 40 per workweek.

54.     Plaintiffs and the members of the Classes are, or were, Tipped Employees employed by Defendants.

55.     Upon information and belief, all of the Defendants' locations are/were operated under uniform policies/procedures applicable to all members of the Classes, including subjecting Tipped Employees to the unlawful pay practices complained of herein.

56.     Defendants govern and administer each AMPD Entity location in a virtually identical manner so that, among other things, customers can expect and receive the same kind of customer service regardless of the AMPD Entity location that a particular customer visits.

57.     Upon information and belief, Defendants' AMPD Entity locations can "share" Tipped Employees and management level personnel.  Indeed, through the same website, an individual can apply to a variety of positions at Defendants' various AMPD restaurant and bar locations.  *See* https://www.ampdgroup.com/employment (last visited June 3, 2020).

58.     Indeed, on occasion, each of the Plaintiffs would have to work at a separate location due to staff shortages and both Plaintiffs worked with employees from other locations on occasion due to staff shortages at their restaurant on a particular night.

59.     As such, upon information and belief, the employment practices complained of herein occurred at all of Defendants' locations as Defendants utilized common labor policies and practices at each of their locations.  Accordingly, Defendants are responsible for the employment practices complained of herein.

### Plaintiff Chelcie Washington's Experience Working For Defendant

60.    Plaintiff Chelcie Washington ("Chelcie") was employed by Defendants as a "server" in their "Ten Penny" restaurant location in downtown Pittsburgh, Pennsylvania.  Chelcie worked at this location from on or about 2016 through the Fall of 2017.  Subsequently, Chelcie was employed by Defendants as a bartender at their now-closed Steel Cactus location in Canonsburg, Pennsylvania from about on or about November 2018 through February 2019.

61.    At both Ten Penny and Steel Cactus, Chelcie was paid an hourly cash wage rate from Defendants and earned tips from customers who chose to leave a gratuity.

62.    While working as either a server or a bartender, Chelcie's hourly wage rate from Defendants was $2.83 an hour.

63.    The only instance when Chelcie recalls the hourly wage being raised by Defendants above $2.83 for any day worked was when she worked for a week to help set up the new Steel Cactus restaurant in Canonsburg before that restaurant opened for business for the first time.  At that time, Chelcie made approximately $9.00 per hour.  At no other time was Chelcie's hourly wage raised about $2.83 per hour, irrespective of the amount of tips earned or the type of work performed.

64.    Chelcie typically worked for Defendants at Ten Penny five days per week, and later worked at Steel Cactus five to six days per week

65.    In total, she typically worked between thirty (30) and thirty-seven (37) hours per week.  Occasionally, Chelcie would work in excess of forty hours per week.

66.    On occasion, Chelcie worked in excess of forty hours per week.  While Plaintiff does not recall her exact overtime rate, Plaintiff believes she was paid less than $5.00 per hour for hours worked in excess of forty in a workweek.

67.     Chelcie recorded her work time by logging into Defendants' timekeeping system known as the "Aloha" system.

68.     Defendants typically required Chelcie and other Tipped Employees to arrive one hour before the restaurant opened to the general public.  During this time, Chelcie and her colleagues performed non-tip generating work and generally helped prepare the restaurant for the opening crowd.

69.      At both Ten Penny and Steel Cactus, Defendants required Chelcie and other Tipped Employees to stay after their last customer had left and/or the restaurant closed for the day so that they could perform certain tasks in order to ensure the restaurant was cleaned and prepared for the following day's business.  These tasks included, among other things: running plates, putting away items, rolling silverware, dusting tables, cleaning booths, organizing beer kegs, and bringing new beer kegs to the bar.

70.     Chelcie estimates that there were usually one to one and one-half hours of closing work before an employee could leave the restaurant after being cut (e.g., ceased receiving assigned tables to wait on).

71.     Because of these significant cleaning/breakdown work, as well as the significant amount of side work Defendants required Chelcie and other Tipped Employees to perform, Chelcie estimates that she and other Tipped Employees spent well in excess of 20% of their time performing non-tip generating work.

72.     Notably, Chelcie was never instructed to clock in under a different job code when performing non-tip generating work or when working after the restaurant closed.  Indeed, to the best of her knowledge, Defendants did not keep track of such time separately from Chelcie's entries into the POS system.

73.     The precise amount of time Chelcie was working each week, upon information and belief, is maintained in Defendants' employment and/or payroll records.

74.     Additionally, Chelcie and other Tipped Employees would claim their cash and credit card tips at the end of each shift.

75.     Chelcie and other Tipped Employees did not receive cash at the end of a shift for tips given to them by a customer paying with a credit card.  Rather, Defendants assured Chelcie and the other Tipped Employees that those tips would appear on their next paycheck.

76.     However, despite Defendants' assurances, Chelcie's paychecks frequently failed to reflect the total amount in tipped wages to which she was entitled.

77.     For example, during one pay period while working at Ten Penny, Chelcie worked as a server for an event hosted by the restaurant, and later worked her normal, full work week, receiving mostly credit card tips during that time.  However, her next paycheck was for only approximately $400, or far less than what she had claimed in tips.

78.     In another instance, Chelcie was shorted approximately $200 in a paycheck.  After complaining to her manager at Ten Penny, the manager agreed, but failed to remit payment of the additional $200 for almost one month.

79.     Based upon these experiences, and upon information and belief, Chelcie alleges that Defendants were improperly allocating tips out of an impermissible and unauthorized "tip pool," which included managers and other non-tipped employees, rather than simply paying out tips earned by an employee to that employee on a dollar-for-dollar basis.

80.     Chelcie also frequently worked shifts at both Ten Penny and Steel Cactus in which she earned little to no tips during an entire shift.  When this occurred, Defendants failed to increase her cash wage in order to ensure that she earned at least the mandated minimum wage.

81.    This issue was particularly egregious at Steel Cactus, where Chelcie worked five to six days per week, yet earned little to no tips during two of those shifts, on average.  In one instance, Chelcie worked a shift from 11:00 a.m. to 5:00 p.m. and earned only $16.00.

82.    Chelcie and other Tipped Employees were also required to make up any alleged "shortages" in the cash drawer they were assigned to work out of at the beginning of their shift. Defendants forced Tipped Employees to make up even minor discrepancies out of their tips, which further reduced their earnings below the mandated minimum wage rate.

**Plaintiff Kiera Washington's Experience Working For Defendant**

83.    Plaintiff Kiera Washington ("Kiera") was employed by Defendants as both a "server" and a "bartender" in their "Ten Penny" restaurant location in downtown Pittsburgh, Pennsylvania.  Kiera began working at this location in or about March 2016.

84.    While working at Ten Penny, Plaintiff began simultaneously working at Defendants' "Penn Society" restaurant and after-hours club.  For approximately two years, Plaintiff worked shifts at both Ten Penny and Penn Society.

85.    On or around May 2018, Kiera transitioned to working exclusively as a bartender at Penn Society, where she worked until on or about May 2019.

86.    Also, on several occasions during her employment with Defendants, Kiera was pulled from her shifts at Ten Penny or Penn Society and directed by Defendants to work a shift at other restaurants and bars operated by Defendants, including Foxtail (then known as "Diesel") and the Steel Cactus location on Carson Street in Pittsburgh's South Side.

87.    In one such instance, Kiera was required to fill-in for a five-hour shift at Steel Cactus, but never received payment from Defendants for working this shift, even after repeatedly receiving assurances from Defendants that payment was forthcoming.

88.     Plaintiff also observed other Tipped Employees at Ten Penny and Penn Society being pulled to cover shifts at other locations owned and operated by Defendants.

89.     At all of Defendants' locations, Kiera was paid an hourly cash wage rate from Defendants and earned tips from customers who chose to leave a gratuity.

90.     While working as either a server or a bartender, Kiera's hourly wage rate from Defendants was $2.83 an hour.

91.     The only instance when Kiera recalls the hourly wage being raised by Defendants above $2.83 for any day worked was when she was periodically scheduled for a "bar cleaning" shift at Penn Society.

92.     The "bar cleaning" shift required employees to come in when the facility was closed to the public and involved a "deep cleaning" of the establishment.   These shifts lasted approximately two to three hours.  For a bar cleaning shift, Kiera was paid $7.50 per hour.  At no other time was Kiera's hourly wage raised about $2.83 per hour, irrespective of the amount of tips earned or the type of work performed.

93.     Kiera typically worked for Defendants at Ten Penny five days per week, and would frequently pick up other shifts.

94.     In total, she typically worked approximately forty (40) hours per week, and frequently worked in excess of forty hours per week.

95.     When Kiera worked over forty hours in a week, her hourly compensation from Defendants was only $4.25 per hour, which is far below the mandatory minimum overtime wage rate of $6.46 per hour.   A true and correct copy of Kiera's October 6, 2017 paystub from Defendants showing an hourly overtime rate of $4.25 per hour is attached hereto as **Exhibit C.**

96.     Kiera recorded her work time by logging into Defendants' timekeeping system known as the "Aloha" system.

97.     Defendants typically required Kiera and other Tipped Employees to arrive one hour before the restaurants opened to the general public.  During this time, Kiera and her colleagues performed non-tip generating work and generally helped prepare the restaurant for the opening crowd.

98.     At both Ten Penny and Penn Society, Defendants required Kiera and other Tipped Employees to stay after their last customer had left and/or the restaurant closed for the day so that they could perform certain tasks in order to ensure the restaurant was cleaned and prepared for the following day's business.  These tasks included, among other things: running plates, putting away items, rolling silverware, dusting tables, cleaning booths, organizing beer kegs, and bringing new beer kegs to the bar.

99.     Kiera estimates that there were usually one to one and one-half hours of closing work before an employee could leave the restaurant after being cut (e.g., ceased receiving assigned tables to wait on).

100.    Notably, because Penn Society is a bar/restaurant geared toward an after-hours crowd, there were frequently either no or only a very few customers from the time Kiera began a typical shift at 9:00 p.m. until approximately 2:00 a.m.  The bar would then be busy for approximately an hour to an hour and a half before clearing out at around 3:30 a.m.  Therefore, a significant majority of a typical shift for Kiera and other Tipped Employees involved non-tip generating sidework.

101.    Because of these significant cleaning/breakdown work, as well as the significant amount of side work Defendants required Kiera and other Tipped Employees to perform, Kiera

estimates that she and other Tipped Employees spent well in excess of 20% of their time performing non-tip generating work.

102.    Indeed, on several occasions, due to Penn Society having no customers until very late in her shift, Kiera recalls spending in excess of 40% of her total shift doing non-tip generating work.

103.    Notably, Kiera was never instructed to clock in under a different job code when performing non-tip generating work or when working after the restaurant closed.  Indeed, to the best of her knowledge, Defendants did not keep track of such time separately from Kiera's entries into the POS system.

104.    The precise amount of time Kiera was working each week, upon information and belief, is maintained in Defendants' employment and/or payroll records.

105.    Additionally, Kiera and other Tipped Employees would claim their cash and credit card tips at the end of each shift.

106.    Kiera and other Tipped Employees did not receive cash at the end of a shift for tips given to them by a customer paying with a credit card.  Rather, Defendants assured Kiera and the other Tipped Employees that those tips would appear on their next paycheck.

107.    However, despite Defendants' assurances, Kiera's paychecks frequently failed to reflect the total amount in tipped wages to which she was entitled.

108.    When Kiera brought her concerns over her inaccurate paychecks to management, they frequently acknowledged that she was correct, and that her paycheck had been shorted relative to the amount of tips she claimed.

109.    However, rather than fix these discrepancies, Kiera was simply assured by Defendants' Director of Operations that her pay would "ultimately balance out," and was also offered AMPD gift cards in lieu of monetary payment.

110.    Kiera also frequently worked shifts at both Ten Penny and Penn Society in which she earned little to no tips during an entire shift.  When this occurred, Defendants failed to increase her cash wage in order to ensure that she earned at least the mandated minimum wage.

111.    This issue was particularly egregious at Penn Society, where Kiera and other Tipped Employees frequently worked private events staged by the family members and friends of the owners of AMPD (specifically Defendants Adam, Michael, and Patrick DeSimone).

112.    During these events, most or all of the food and drinks were "comped" by the restaurant, meaning that little to no cash was exchanged during the event, and thus, little to no tips were earned by Kiera and other Tipped Employees during those shifts.  Indeed, Kiera has earned $0 in tips at these events in the past.

113.    Indeed, on one occasion, Kiera recalls her manager telling her "you're donating your time tonight."

114.    When Kiera raised the issue of insufficient compensation during these events with her managers, the managers jokes that "she was making a donation" during that shift, as well.

115.    Kiera and other Tipped Employees were also required to make up any alleged "shortages" in the cash drawer they were assigned to work out of at the beginning of their shift. Defendants forced Tipped Employees to make up even minor discrepancies out of their tips, which further reduced their earnings below the mandated minimum wage rate.

116.    Kiera estimates that Defendants forced her to make up alleged cash shortages in her drawer on at least ten to fifteen occasions.

## The Tip Credit Provision & Requirements

*FLSA Requirements*

117.    Rather than pay its Tipped Employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants chose to take a tip credit and pay these employees less than the applicable minimum wage.

118.    Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the cash wage paid by the employer equals at least the applicable minimum wage.[4]

119.    According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

120.    As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

121.    First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

---

[4] An employer is not relieved of their duty to pay an employee wages at least equal to the minimum wage by virtue of taking a tip credit or by virtue of the employee receiving tips from customers in an amount in excess of the applicable minimum wage.  That is, an employer in the restaurant industry must pay the employee wages at least equal to the minimum wage or equal to the minimum wage less the tip credit, provided the tips claimed exceed the tip credit.  Under no circumstances is the employer relieved of paying at least the minimum wage for all hours worked, regardless of how much an employee earns in tips.

122.    Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit.  In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

123.    Third, the employer must inform the Tipped Employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee.  In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

124.    Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

125.    Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

126.    In short, Fact Sheet #15 effectively sets forth in plain English what is required under the regulations, including 29 C.F.R. § 531.59(b), for an employer to properly claim a tip credit.

127.    An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.[5]  If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

128.    Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference.  Stated another way, if a tipped employee earns

---

[5] Courts have strictly construed this notification requirement.  Accordingly, some courts have held that a generic governmental poster (which is required by the DOL) does not satisfy the tip credit notification requirement.

less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

129.    As set forth herein, Defendants failed to comply with certain of the FLSA's provisions regarding the claiming of a tip credit.

130.    Further, an employer is *not* permitted to take a tip credit against its minimum wage obligations when (i) it requires its tipped employees to perform non-tipped work that is unrelated to the employees' tipped occupation (*i.e.,* "dual jobs") or (ii) it requires its tipped employees to perform non-tipped work that, although related to the tipped employee's occupation, exceeds 20% of the employee's time worked during a workweek.

131.    As set forth herein, Defendants violated these provisions by requiring Tipped Employees to perform work that was *unrelated* to their tipped occupation (*e.g.,* by cleaning the restaurant) and only paying them the sub-minimum tip-credit wages.

132.    In addition, Defendants also violated these provisions by requiring Tipped Employees to perform non-tipped work that, *assuming arguendo* was related to their tipped occupation, exceeded 20% of their time worked in one or more individual workweeks during the period at issue.

### *Pennsylvania Requirements*

133.    Pennsylvania state law has a substantially similar requirement to the FLSA's tip notification requirements.  *See* 43 P.S. § 333.103(d).

134.    Importantly, however, Pennsylvania mandates a higher minimum cash wage and requires employers to pay at least $2.83 per hour.  Thus, under Pennsylvania law, the maximum tip credit is $4.42 per hour.[6]

135.    As such, an employer cannot be said to have complied with Pennsylvania's tip credit notification requirements where the employer simply relies on United States Department of Labor mandated posters, as said posters do not explicitly identify the tip credit amount in Pennsylvania (as it differs from the FLSA tip credit amount).

136.    In addition, 34 Pa. Code § 231.34 also requires employers to maintain payroll records that contain the following information:

(1)    A symbol or letter placed on the pay records identifying each employee whose wage is determined in part by tips;

(2)    Weekly or monthly amount reported by the employee, to the employer, of tips received.  This may consist of reports made by the employees to the employer on IRS Form 4070;

(3)    Amount by which the wages of each tipped employee have been deemed to be increased by tips, as determined by the employer, not in excess of 45% of the applicable statutory minimum wage until January 1, 1980 and thereafter 40% of the applicable statutory minimum wage.  The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week;

(4)    Hours worked each workday in any occupation in which the tipped employee does not receive tips and total daily or weekly straight-time payment made by the employer for such hours; and

---

[6] Like the FLSA, Pennsylvania law states that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the employee.  *See* 43 P.S. § 333.103(d).

(5)     Hours worked each workday in occupations in which the employee received tips and total daily or weekly straight-time earnings for the hours.

### Defendants' Failure To Comply With Applicable Wage Laws

137.    As explained above, the DOL has very specific requirements regarding what an employer must notify his/her employee of if that employer intends to claim a tip credit.

138.    Rather than comply with the notification requirements set forth in the regulations and made plain in Fact Sheet #15, Defendants chose to simply pay their Tipped Employees $2.83 per hour.  In short, Defendants failed to conform to the strict regulatory requirements necessary to satisfy the tip credit notification provisions.

139.    The Third Circuit and district courts across the country have held that where an employer fails to satisfy any one of the notification requirements, the employer forfeits the tip credit and must pay the employee the full minimum wage.

140.    Indeed, Plaintiffs do not ever recall being notified by Defendants that they intended to take a "tip credit," nor how much that amount would be.  Evincing the magnitude of Defendants' abject failure to notify Tipped Employees of their intention to take a tip credit, until recently, neither Plaintiff never even heard the term "tip credit."

141.    Indicative of Defendants' abject failure to comply with the tip credit provisions, Defendants frequently required Tipped Employees, including Plaintiffs, to cover cash shortages. Indeed, Kiera recalls having to cover cash shortages approximately 10 to 15 times during the course of her employment.

142.    In addition, Chelcie is aware of at least one instance where management required a Tipped Employee to cover half the bill when a customer walked out without paying.

143.    Further, as noted above, both Plaintiffs worked shifts where they made little to no tips and Defendants did not adjust their hourly rate to ensure that Plaintiffs always received at least the minimum wage for every hour worked.

144.    As set forth above, these acts constitute violations of the tip credit requirements and applicable wage and hour laws.

145.    Defendants also failed to comply with 43 P.S. 231.34 insofar as it failed to notify employees in writing of the hours worked where the Tipped Employee did not receive tips.  Rather, Defendants took the maximum tip credit permissible for every hour worked by its Tipped Employees, including Plaintiffs, irrespective of whether its Tipped Employees (i) actually earned sufficient tips to substantiate the tip credit claimed or (ii) whether the employees were engaged in tip generating work.

146.    Indeed, Defendants violated applicable Pennsylvania wage laws by requiring Tipped Employees, including Plaintiffs, to be paid a sub-minimum wage for work performed when the Tipped Employee had no opportunity to generate tips, such as after the restaurant was closed to the public.  At no time did Defendants have Plaintiffs or other Tipped Employees clock in under a different code or pay these individuals the full minimum wage, instead electing to continue to pay them the minimum cash wage and continuing to claim the tip credit despite the fact that these employees could not earn tips during this time.

147.    Such conduct constitutes a violation of 43 P.S. 231.34 insofar as Defendants failed to record the hours where Plaintiffs and the other Tipped Employees were engaged in non-tip generating work.

148.    Indeed, Defendants regularly and frequently required Plaintiffs and other Tipped Employees to perform a number of non-tipped duties *unrelated* to their tipped occupations,

including *inter alia*: dusting tables; pulling out and moving booths; sweeping and mopping the floors; cleaning the restaurant; breaking down and cleaning the server line; ensuring the general cleanliness of the front of the house; and rolling silverware.

149.    Further, Defendants regularly and frequently required Plaintiffs and other Tipped Employees to perform a number of non-tipped duties *related* to their tipped occupations, including *inter alia*: preparatory and workplace maintenance; stocking and setting tables; cleaning booths; stocking stations throughout the restaurant; bussing tables; brewing coffee; and rolling silverware.

150.    Despite the applicable law, Defendants paid Plaintiffs and other Tipped Employees at an hourly rate less than the full minimum wage for all hours worked, including during periods of time which Plaintiff and members of the Collective Class were performing non-tipped work.

151.    Because of the above violations, Defendants owe Plaintiffs and the other Tipped Employees $4.42 for every hour they worked and were only paid $2.83 per hour.  Thus, the amounts due and owing are significant.

152.    Further, because the maximum permissible tip credit in Pennsylvania is $4.42 per hour and the overtime rate for minimum wage employees is $10.88 ($7.25 x 1.5), the proper overtime rate for a tipped employee in Pennsylvania is $6.46 per hour.

153.    Because, upon information and belief, Defendants paid Plaintiffs and the other Tipped Employees the wrong overtime rate, Plaintiffs and the other Tipped Employees are owed the remaining unpaid compensation for every hour worked in excess of forty during the statutory period.

**CLASS & COLLECTIVE ALLEGATIONS**

154.    Plaintiffs bring this action on behalf of the Collective Class and Collective OT Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b).

Plaintiffs also bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the PA Class and PA OT Class for claims under the PA State Laws.

155.    The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b).  The claims brought pursuant to the PA State Laws may be pursued by all similarly-situated persons who do not opt-out of the PA Class pursuant to Fed.R.Civ.P. 23.

156.    Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable.  While the exact number of the members of these Classes is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, given that Defendants operate multiple restaurants, there are likely well over 100 individuals in each of the Classes.

157.    Defendants have acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

158.    The claims of Plaintiffs are typical of the claims of the Classes they seek to represent.  Plaintiffs and the members of the Classes work or have worked for Defendants and were subject to the same compensation policies and practices.

159.    Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

    a.  whether Defendants have failed to pay the full minimum wage for each hour worked;

    b.  whether Defendants satisfied each of the requirements in order to claim a tip credit against each hour worked;

    c.   whether Defendants were precluded from claiming the tip credit during the period encompassed by this Complaint; and

    d.   whether Defendants paid the proper overtime compensation due and owing during the period encompassed by this Complaint;

    e.   whether Plaintiffs and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

160.    Plaintiffs will fairly and adequately protect the interests of the Classes as their interests are aligned with those of the members of the Classes.  Plaintiffs have no interests adverse to the Classes they seek to represent and have retained competent and experienced counsel.

161.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

162.    Plaintiffs and the Classes they seek to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay practices.

163.    Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and willful violation of the PMWA.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

164.    Plaintiffs, on behalf of themselves and the Collective Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

165.    At all relevant times, Defendants has had gross revenues in excess of $500,000.

166.    At all relevant times, Defendants have been and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

167.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiffs and each of the Collective Class Members within the meaning of the FLSA.

168.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the federally-mandated minimum wage, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

169.    Defendants have violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

170.    Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT OVERTIME VIOLATIONS
### (On Behalf of the Collective OT Class)

171.    Plaintiffs, on behalf of themselves and the Collective OT Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

172.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed herein.

173.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.,* and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the members of the Collective OT Class.

174.    At all relevant times, Plaintiffs and the members of the Collective OT Class were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a), and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. § 203(e), (r), and (s).

175.    At all relevant times, Plaintiffs and the members of the Collective OT Class were employees of Defendants within the meaning of 29 U.S.C. § 203(e).

176.    At all relevant times, Defendants have been an enterprise engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. § 203(e), (r), and (s) with annual gross volume of sales made or business done in excess of $500,000.00.

177.    At all relevant times, Defendants employed Plaintiff and the members of the Collective OT Class within the meaning of 29 U.S.C. § 203(g).

178.    As stated above, Defendants had a policy and practice of failing to pay the proper overtime rate for all overtime hours worked by their Tipped Employees who worked in excess of forty (40) hours per week.

179.    Defendants' failure to pay Plaintiffs and all other members of the Collective OT Class the proper overtime compensation due and owing is a violation of 29 U.S.C. §§ 206, 207.

180.    In violating the FLSA, Defendants acted willfully and with disregard of clearly applicable FLSA provisions.  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning 29 U.S.C. § 255(a).

181.    Due to the Defendants' FLSA violations, Plaintiffs and the members of the Collective OT Class are entitled to recover from Defendants their unpaid overtime compensation due and owing, an additional equal amount as liquidated damages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

182.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

### THIRD CLAIM FOR RELIEF
### PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS
#### (On Behalf of the PA Class)

183.    Plaintiffs, on behalf of themselves and the members of the PA Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

184.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiffs and each of the PA Class Members within the meaning of the PMWA.

185.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the Pennsylvania mandated minimum wage, Defendants improperly took a tip credit and paid Tipped Employees at a rate well below the Pennsylvania minimum wage.

186.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the required minimum wage in Pennsylvania, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

187.    As a result of Defendants' willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff and the members of the PA Class less than the Pennsylvania minimum wage for all hours worked.

188.    Defendants have violated and, continue to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

189.     Due to the Defendants' violations, Plaintiffs, on behalf of themselves and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**PENNSYLVANIA MINIMUM WAGE ACT– OVERTIME VIOLATIONS**
**(On Behalf of the PA OT Class)**

190.     Plaintiffs, on behalf of themselves and the members of the PA OT Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

191.     At all relevant times, Plaintiffs and the members of the PA OT Class were "Employees" and Defendants were their "Employer" within the meaning of the PMWA.

192.     The PMWA provides that employees who work over 40 hours in a workweek shall receive "1½ times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week."  43 P.S. § 333.104(c).

193.     Defendants violated the PMWA by failing to pay Plaintiffs and the members of the PA OT Class the legally mandated hourly overtime premium for hours worked over forty in a workweek.

194.     In violating the PMWA, Defendants acted willfully and with disregard of clearly applicable PMWA provisions.

195.     Pursuant to the PMWA, Plaintiffs and the members of the PA OT Class are entitled to recover from Defendants an amount equal to unpaid overtime compensation for all the hours worked in excess of forty hours in a work week for which they did not receive the proper overtime compensation, in an amount to be proven at trial, together with interest, costs and reasonable attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**PENNSYLVANIA WAGE PAYMENT COLLECTION LAW**
**(On Behalf of the PA Class)**

196.     Plaintiffs, on behalf of themselves and the members of the PA Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

197.     At all relevant times, Defendants have employed, and/or continue to employ, Plaintiffs and each of the PA Class Members within the meaning of the WPCL.

198.     Pursuant to the WPCL, 43 Pa. S. § 260.1 *et seq.* Plaintiffs and the members of the PA Class were entitled to receive all compensation due and owing to them on their regular payday.

199.     As a result of Defendants' unlawful policies, Plaintiffs and the members of the PA Class have been deprived of compensation due and owing.

200.     Indeed, it is black letter law that an employee cannot voluntarily agree or contract to be paid less than the legal minimum wage for each hour worked.  Accordingly, at a minimum, an employee must contract to be paid at least the minimum wage for each hour worked.  Through the practices described above, Defendants paid Plaintiffs and other Tipped Employees less than the legal minimum wage for each hour worked.

201.     Further, as set forth above, on occasion, Defendants failed to pay Plaintiffs and members of the PA Class all wages due and owing that pay period.

202.     Plaintiffs, on behalf of themselves and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid compensation, and an additional amount of 25% of the unpaid compensation as liquidated damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and/or on behalf of themselves and all other similarly situated members of the Classes respectfully request the Court grant the following relief:

A.     Designation of this action as a collective action on behalf of the Collective Class and Collective OT Class, and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.     Designation of the action as a class action under F.R.C.P. 23 on behalf of the PA Class and PA OT Class;

C.     Designation of Plaintiffs as representatives of the Collective Class, Collective OT Class, PA Class, and the PA OT Class;

D.     Designation of Plaintiffs' counsel as class counsel for the Collective Class, the Collective OT Class, PA Class, and the PA OT Class;

E.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and PMWA;

F.     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

G.     An award of unpaid minimum wages to Plaintiffs and the members of the Classes;

H.     An award of unpaid overtime wages to Plaintiffs and members of the Classes;

I.     An award of liquidated damages to Plaintiffs and members of the Classes;

J.     An award of interest to Plaintiffs and the members of the PA Class and PA OT Class;

K.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiffs and members of the Classes; and

L.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all questions of fact raised by the complaint.

Dated: June 4, 2020                                   Respectfully submitted,

*/s/ Gary F. Lynch*
**CARLSON LYNCH LLP**
Gary F. Lynch
Edward Ciolko
James P. McGraw
1133 Penn Ave, 5th Floor
Pittsburgh, PA 15222
T: 412-322-9243
F: 412-231-0206
glynch@carlsonlynch.com
eciolko@carlsonlynch.com
jmcgraw@carlsonlynch.com

**CONNOLLY WELLS & GRAY, LLP**
Gerald D. Wells, III
Robert J. Gray
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Telephone: 610-822-3700
Facsimile: 610-822-3800
gwells@cwglaw.com
rgray@cwglaw.com

***Attorneys for the Plaintiffs & the Proposed Classes***